I understand you had to do double duty today. Yes. It's quite a feat. Both of you. All right. Very good. Whenever you're ready. Thank you, Your Honors. May it please the Court, my name is Stephanie Bond. I represent Michael Huntoon, the appellant in this case. I would like to reserve, if possible, five minutes for rebuttal. There were several errors that were presented in appellant's brief, and specifically there was an issue regarding whether the search warrant in itself was valid in the first place that the state of Arizona obtained, and whether or not the search of the computer, Mr. Huntoon's computer, by the government pursuant to taking it from the state, or basically taking a copy of it from the state, was valid, or whether that was an illegal search. And then lastly, there was a discovery violation that is really pursuant to this Court's case in Busiak, and I hope I'm pronouncing it correctly. So I was planning on touching on all three, unless there's an issue specifically that this Court wanted to focus the time on. And then first, the search warrant itself. The issue and the error with the search warrant was that the district court did not take out the entire error. They inserted something into the search warrant in finding that there was probable cause. They took out the issue that was clearly false of there being an Ethernet cable that supposedly connected Mr. Huntoon's trailer to the Internet that was in the house. So what's my standard of review as to that question? Your Honor, I believe it was a mixed, there's an abuse of discretion. I think it would be clearly erroneous, wouldn't it, as to the facts determined? Well, I believe under the facts, yes. Although, Judge, this was... So in this particular instance, the district court found factually there was no evidence of deliberate falsehood or reckless disregard for the truth. And they also said that then they tried to come up on the other hand and say, and not only that, but if I took out these things, there still wouldn't be a problem. Well, yes, because they inserted the issue of the Internet. But I'm just saying, what I'm trying to do here is I'm trying to say, is there anything in what they did in that particular situation which is clearly erroneous? Well, I believe inserting the issue of the Internet is clearly erroneous because the case law says that they're supposed to go with the four corners of the document. They're not allowed to insert something. And we know from the actual sworn testimony transcripts that were given as an offer of proof in this case that the detective who went to the house, Detective Southwick, he specifically did not even ask about the Internet. And he said that in his sworn testimony. He said, I never used the word Internet. I asked if he was connected to her media account. He said, I have no idea what Mediacom does. I know it's a Mediacom account. I asked if he was connected to her media account. I never asked him. Then we also have a clearly erroneous part that they said that they spoke with Mr. Huntoon. And he said he used the Internet. You know, it's a cavil because the record is that the mother-in-law said his computer is connected to mine. If an Ethernet has to do with the methodology of connection, the important fact is connection. And the connection is admitted. And how can you say that the affidavit which uses Ethernet is clearly erroneous? The purpose is the same. There's a connection. The defendant is getting his connection from his mother-in-law. Whether it's done by cable or some other method is really irrelevant. Well, Judge, I would respectfully disagree with your version of the facts. I mean, if you look at exactly what was said, a computer was not mentioned either. Specifically, and again, I'm reading it exactly as the transcript was of the tape recording of the conversation between Detective Southwick and Cheryl, the mother-in-law. Southwick says, so do you have a router and a modem and all that? And she says, I honestly don't know. And then he says, he doesn't have his own connection out there as far as hardware for a media account. And she says, no, he's got it connected on mine. And the detective said, he's got it connected on yours, all right. Nothing was mentioned about the Internet. Nothing was mentioned about a computer. Again, those are facts that are being inserted. What is connected to mine? Well, Judge, a media account could be telephone. It could be Internet, of course. And it could be television. I mean, MediaCom does all. But I guess what we're really looking at here is the district court was trying to determine whether there was an evidence of deliberate falsehood or reckless disregard. And looking at the same thing that you're arguing now, they said, no, there is none. And they gave a reason for that. And if I'm going to look at that as clearly erroneous, I'm having a tough time understanding why I would say that it was clearly erroneous that there was no evidence of that. Well, Your Honor, in the actual – how you would connect the two, what the situation was, what the district court was saying, there's no reason here for me to say they were trying to give a falsehood to me or that they had a reckless disregard for the truth. I've listened to all this, and I don't think it's so. And when I look at the record, I say to myself, okay. Then the second point would be if I remove all this allegedly false statement, then there was still significant probable cause. But the first verse is, why is it clearly erroneous about the deliberate falsehood or the reckless disregard? And that's the part I can't find. Well, Judge, I think it's clearly erroneous because of the facts that were presented in the sworn testimony. I mean, you have Detective Angel, who's doing the affidavit, and he's representing things that he – are not true, clearly not true. You have Detective Southwick saying, I don't even know that I talked to Detective Angel. I think I talked to another detective who must have talked to Detective Angel because I've never even met Detective Angel. So, of course, there has to be a deliberate – So the district court said, quote, it is undisputed that Huntoon's laptop computer was connected to the mother-in-law's Internet service having the IP address corresponding to the search warrant. Is that clearly erroneous? It is clearly erroneous. They hadn't checked the computer. In what respect is it clearly erroneous? They had not checked the computer at that point. In what respect is it clearly erroneous? Because at the time that they were executing the search warrant, they did not know that. In fact – They did not know that until months later when they checked his computer. In fact, was Huntoon's laptop computer connected to the mother-in-law's Internet service? Yes, months later they found that out when they checked the computer. But at the time of the affidavit – and, again, we're inserting facts. Was it the fact that the IP address corresponded to the search warrant? Yes, months later they determined that, yes. The finding of the district court, you say, is clearly erroneous because it reflects knowledge found after the fact. That is correct, Your Honor. Not the four corners of the affidavit as the case law dictates. The case law dictates we can't insert things. The point you have is that the connection was something other than Ethernet connection. No, the clearly erroneous part is that nobody asked about Internet connection. The important thing is that it was not an Ethernet connection but some other connection. That's what it comes down to. It comes down to – That's irrelevant. He's connected to her media account, not Internet account, not computer. What's a media account? Exactly, Your Honor. What is a media account? Well, you raised it. I'm asking you. Well, and again, I believe a media account, just like Detective Southwick said— One of the privileges of the judge is the judge asks the questions, not the attorney. Well, and, Judge, I say that because of the fact that that's what Detective Southwick said, is I don't know what a media account is. Do you want to move to your second point? Yes, Your Honor. Because you're running out of time. Thank you, and I will definitely move on. Your Honors, so the government basically just went and got a hard copy from the state of the computer. They never got their own search warrant. What do you do with United States v. Johnson? You don't need to explain to me all the facts here because I've read it and I've gone through it. United States v. Johnson says, Once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant. Judge, the spirit of that was the fact that once— The spirit? Yes. I'm reading what was said in Johnson. And I 100% agree with you on that. But the problem is that this is a computer. There's a lot of private information in this computer that the court is now acknowledging. Computers are different than other types of things. And we have to protect people's privacy. Well, I'm going to make a different rule for a computer in this case. Is that what you're asking me to do? No, I'm not asking you to do that. I'm just distinguishing the fact that that was different because of that, because of the fact that we are talking about a computer and we are talking about lots of private documents within the computer itself. We are also talking about the fact that the affidavit, sworn affidavit, and the warrant itself prohibited them from giving a copy. Prohibited. So whether or not the case law says, okay, you can look at it as many times as you want, the warrant itself prohibited it. Do you contend that the search that the federal agents conducted exceeded the scope of what the state agents? Absolutely exceeded the scope. In what respect? Well, Judge, first of all, the search warrant said that they were specifically looking for these 11 files that were part of the state case that had nothing to do with the federal case. And it specifically said that's all they were looking at. And that's what they did. As well as information that would establish, I guess, like who owned it and who had it, right? But they didn't do that. Okay. The federal government looked for other pornography not involved in the state case. They also looked at an extensive amount of documents. And the district court's decision that they have a right to look for relevance throughout the computer, that's a scary concept in computers because there's so much personal information. The idea that the government can say, I can look at anything I want to determine in your computer, whether or not, you know, it's relevant to my case. How else would someone conduct a search of a computer? By keywords. Well, especially if you were looking for amorphous information like who owns this, you know, that kind of thing. By keywords. I mean, basically, that's the way they do the search. In the testimony, the forensic said that's the way we do a search. We look, we put in keywords that are pornography keywords. But in this case, they got stuff about his job, his resume, photographs, personal photographs. They got, obviously, correspondence about an estate and correspondence to his office. I mean, I have in the sealed excerpts shows all of the documents that they obtained that had nothing to do with pornography. Was that extra stuff used at trial? Yes, it was. I was the trial attorney. It was used at trial. And, again, it was used to establish that he, in fact, was the owner of the computer, which was never disputed. That was not the defense. The defense didn't have anything to do with it. That's why it was relevant. What's that? So it was irrelevant? It was very relevant. Well, if it wasn't even disputed, it was irrelevant. Exactly. But more importantly, though, it was a violation of his privacy rights and his computer. That's why I ask you, are you asking me in this case to make a different rule when it comes to computers? And you said no. I'm not asking you. I am asking you to say that there are significant privacy interests in a computer, and we need significant oversight to make sure that those rights are not violated. So in that respect, I am looking for a new or refined. Is there a good case for that? Well, Judge, there are cases, obviously. I mean, I look for a case. I look for a case, and I couldn't find one. So I'm asking, what's your best case for that, which you now argue? It's the telephones. It's the recent cases that have come out about telephones. The Supreme Court has said we need oversight now. You have to get a warrant on phones because you can't just go through a person's phones. And they had said a phone is like a computer because it contains all this personal information. And so I think in the spirit of what the Supreme Court has been looking at, computers are to be protected just like they were protecting cell phones, that we need significant oversight as to what they're allowed. They're not allowed to look at anything to determine its relevance. I mean, that's a phishing expedition. That's a privacy interest. There's private personal information on that that they should not be able to just look at to determine if it's relevant. Why don't you pause there? You're running low on time. I'll give you a little bit extra time for rebuttal, and we'll hear from the government. Thank you. All right, thanks. Thank you. May it please the Court, I'm Chris Cabanillas on behalf of the United States. The government would like to address the issue that has been addressed today, which is the search of the defendant's laptop computer by state based on the search warrant and then the fact that the federal officers did not need to get an additional search warrant. Judge Smith is correct that basically this case, in large respect, on the second issue is governed by Johnston, and that once they had found the child pornography in state through the state warrant, that the federal officers did not act unlawfully, number one, because the defendant no longer had an expectation of privacy in the child porn that had been discovered, and number two, there was no exceeding of the scope. And that's a factual finding reviewed for clear error. You had asked Judge Smith about how we review Franks, the first prong, and that is reviewed for clear error. There was none here, moving back to that first argument, but also with regard to the scope on the second argument. That question is reviewed only for clear error, and there was none. I direct this court to footnote 12 of the government's brief at page 32. The district court also rejected the argument that the search, this is a quote, rejected the argument that the search had to be limited to searching the exact contraband files found by the state officers, noting that it was only necessary for HSI to limit the search to finding evidence of child pornography. It also found the officers did not act improperly, even if they inadvertently found other non-contraband files, noting that brief perusal of the documents, and this is paraphrasing, during a search is permissible to ascertain their relevance. Can you tell us what the state warrant said in terms of the scope of the search that was authorized there? Your Honor, the precise language I don't have in front of me, but it authorized the search of the defendant's computer for child pornography, the state search warrant did. And Agent Knuckles testified at trial as well that his understanding, and he was the federal officer who conducted the review of the mirror drive, that his understanding is that the parameters were the state search warrant. So I just respectfully submit there has been no showing of clear error. I'm just trying to figure out what the state agents reviewed. Did they review every nook and cranny of this guy's computer, and you're saying that therefore the federal agents were allowed to do the same? Detective Fiore. I get a different sense from your opponent as to what happened. And I would respectfully submit that the record is contrary to what defense counsel is submitting. Detective Fiore testified at trial. He found over 300,000 images. That shows how completely and thoroughly this had been searched, and that that was also not found to be unlawful in state court. The first part of the Franks. How many files? I'm sorry? How many files? He said he found 300,000 files, and that's cited in the brief. Thousand separate files. Mm-hmm. And in this particular case, though, the government and I want to. Your opponent says that they were confined to the 11 that was in the indictment. Well, we had actually four files in count one, and then I think it was six or seven files in count two which dealt with the flash drive. In the first count, the four videos, only one was shown for a few seconds, and that was, I think, a little girl performing fellatio on an adult male. Then we had the other charged count from the flash drive. Both of those were found in the father's property when the defendant was there with his RV. And then the other acts. Ms. Bond says, I don't know what the answer is. Ms. Bond says that the purpose of the warrant in the state court was 11 acts of child pornography. He was. And that the feds went way beyond that. I respectfully submit that it's the charged counts that govern the scope of what the search warrant permitted. The search warrant allowed the state officers to search pursuant to that warrant when we would submit, again, based on the court's finding that it was not overbroad. That was not a clearly erroneous determination. In addition, the. Anyway, it's all contraband. Yes. It's always set up to search, even though there might be just 11 acts stated in the indictment. All these other similar acts would be relevant and would be appropriate to be searched in a warrant. Correct. Why? Because the. Well, here's. As long as they're covered in the warrant. Yeah. The other acts, though, I want to clarify. They've got to be covered in the warrant in order to be searched. We don't have the warrant. You have the state warrant in the record? Yes, Your Honor. Yeah. But what I'm saying is. And the district court also said it didn't go beyond the scope because that dovetails to that first part, too, about why the affidavit provided a fair probability that they would find child porn in the location to be searched, including all the dwelling structures, the And his laptop was found in the mother-in-law's property in the RV when he was staying there. So the other acts would deal with those 10 or more counts that were. Actually, there were more images in the other acts than the 10, but only one was shown out of all of them. In any event, the district court did not find that the officers exceeded the scope here. In addition, Your Honor had been asking about isn't the key fact the internet connection we would submit? Yes. I would point the court to the district court's determination on page 18 of the defendant's excerpts of record volume one. And this is what Southwick asked the question to Sheryl. He doesn't have his own connection out there as far as a hardwire. And the district court says his words hardwire. It's all under yours. And Friedrich says, no, he's got it connected to mine. Any reasonable officer is going to interpret that as an internet connection. And that's what the state judge found. That's what this judge found. So we would submit that it was not misleading at all, but certainly not intentionally misleading. And that's where the district court made the finding, too. But for the glaring inconsistency between the affidavit statement and the conversation, quote, the defendant makes no offer of proof to accompany his allegation of deliberate falsehood or reckless disregard for the truth. And that's at ER1, page 18, that same page. So, again, we would submit that's a Frank's one-prong finding. That was not clearly erroneous. And in addition, even if you excise that out, there was clearly probable cause here to search the defendant's laptop computer from the mother-in-law's property based on all of the evidence that was provided in that state search warrant. Let's go back to United States v. Johnson, where we held once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate, uninterrupted possession of the police, may be conducted without a warrant. And this is the basis for the absence of need for a Federal warrant. One of the reasons. No, yeah. So the basis is once an item in an individual's possession has been lawfully seized and searched. Ms. Bond argues that the search went well beyond the lawful. And my question to you is, under Johnson, does that make a difference? If the computer had been lawfully seized and there was a lawful search within a much broader, perhaps unlawful search, is it still proper for the Federal authorities to take that same item in legitimate, uninterrupted possession and look what's appropriate for the Federal indictment? Yes, but they can't exceed the scope of the state search warrant. And that's the factual finding the district court made here, that they did not exceed the scope of the state search warrant. And that's what's critical as well. So it's the combination of, hey, you don't have any expectation of privacy in child pornography after it's discovered already by the state. You don't have an expectation of privacy to even challenge this, which is what the magistrate and district court found. But second, you also want to operate within the scope of the state warrant, and the district court found that. In footnote 12 of our brief, we discuss it. I just wanted to make sure. Does your brief set out the state warrant? I'm sorry? Does your brief set out the state warrant? Yeah, it's actually in the excerpts of record. Is the address for the property we're talking about 1404 South Smith Drive? It's like Smyth or there was another word that was used, the street. There had been some confusion about that, and the state motion hearing discusses it, but there wasn't a question about them having searched the correct property. So that was not disputed federally. I'm trying to figure out if the warrant I'm looking at is the right one. Yeah, I think if it dealt with Smyth or whatever that street, I think that sounds about right. Hang on, just hang on. It says 1404 S., Smyth Drive, Apache Junction, Arizona. Apache Junction, yes. That's the place we're talking about? Mm-hmm. It should be. Okay. Again, I always hesitate to agree if I'm not looking at it, but I assume you are looking at it, and the state search warrant is the state search warrant, because there was just one that was obtained for the Apache Junction. Well, it says that they can search any and all computer records, documents, and materials. So, I mean, were they just able to go through every part of the computer then? You know, the documents that she cites as well, Defense Counsel, I just wanted to mention in that same footnote, we noted that the district court also said that it was going to be admitting the contraband evidence. So, for example, if they had located a resume through their search to look for child porn, that resume wasn't admitted here. So there's a lot of, and we discussed that in our brief as well, there's an argument that they found X, Y, or Z, but, again, that was not admitted. And, again, the district court specifically found that this search did not exceed the scope, a very factual finding we'd submit. But to answer Judge Watford's question, I think it was a very specific question, if you look at the warrant, the warrant suggests that they're all files, right? I'm sorry? If the warrant, you look at it, it says that you get all files from the computer, right? I just want to pull up the exhibit I thought I had with the search warrant. Now, I'm not able to locate it right now, Your Honor, but, again, I think that the state warrant was very broad, and the feds did not exceed the state warrant. Well, they could have if that's the... I mean, if you look at the language of the warrant, it's pretty broad. I don't know how they could. I remembered the language about how they said that, you know, the district court said that there was probable cause to search the property, including the RV, the sheds, and all computer equipment, including his laptop. I just didn't remember that language. Even if we didn't have to give deference to the district court judge reading the warrant, my view was that it was as broad as broad. Does the listing of specific files limit the generality of the first phrase? First phrase, any and all computer records, et cetera, which is extremely broad. At the end, there's listed files, and the question is whether the listing of the files limits the generality of the scope. Well, Your Honor, again, I'm so sorry that I don't have that in front of me to be able to look at it. I would say that probable cause can be based on a totality of circumstances. In addition, what is allowed to be searched, the district court found that what was found here by the feds did not exceed the scope of that. I'd also submit that I wanted to mention, too, that nothing about this, by the way, affects count two. Count two was based on the flash drive found in the father's property, done under a federal search warrant separate. So that count would not be affected by this. But in any event, we would submit that the search was lawful. Oh, I forgot. Defense counsel brought up, I think, the phone cases, Riley and whatnot. I remember those cases. I know this Court's familiar with both Riley and Cotterman. And neither of those cases, Riley dealing with cell phones, Cotterman dealing with border searches, in neither case was there a warrant, in neither case was there probable cause. Here we have a state search warrant that authorized that search, and the feds acted properly in conducting their own search. Okay, thank you. Unless the Court has any more questions, we'll rely on our brief and ask you to affirm. Thanks very much. Thank you. Let's put two minutes on the clock for defense counsel. Your Honors, I know you were talking about the search warrant. I do have the search warrant in front of me, and I do agree that there's an issue because of the fact that it specifically lists the files that the state is supposed to be looking for. And I'm specifically looking at the second page, which would be ---- Is there any limiting language in that warrant? Well, that's the problem, Judge. There is none. It's ---- Quote it to me if there is. Well, the problem is that the search warrant is extremely broad. Well ---- I mean, and that was one of the things that we argued was that, I mean, this search warrant is just extremely, extremely broad. It's in front of me. But then, well, I understand that with the district court. But then the issue, though, Judge, becomes the fact that then they do list the certain files. So while you've got a paragraph that sounds like a standard paragraph that we're going to get any and all computers, blah, blah, blah, blah, any and all documents, then we've got specifically listed files, which are the 11 files that the state's torrential downpour program intercepted over the Internet that he was charged with. Under listed files, there are several very broad paragraphs. The penultimate one is any documentation, written or electronic, showing the use of, possession of, or affiliation with any other peer-to-peer network, including, et cetera. Any, next bullet, any evidence related to ownership, control, or use of residence, et cetera. Any and all software applications able to access the BitTorrent network. You've got some specifics, but you start with a general and you end with a general. I'm not sure it supports your argument that we're limited to the specific files that come in here. Well, and Judge, I think that the fact that the state search warrant lists the specific files and lists the specific programs and so forth that it's looking at, I think it does narrow it and limit it. Otherwise, I think that it's... But there's a catch-all category at the top that says any image or movie file containing or displaying minors engaging in any sexual activity or sexual exploitation. So that suggests to me that they could look through the whole computer to find anything that fits that description. Well, yeah. And then we've got the limit, though, under the 11 files that they are asking for. They're not limited to looking just for those 11 files. They're able to look at the entire computer to find out if there is any image of child pornography. That's how I read the warrant. And I understand that. And I think that there's a contradiction in the warrant because of that, because they've got the listed files and then they've got this huge broadness. The other thing, though, that I would point to... That argument made any place in your brief? Yes, Your Honor, it is. Okay. I'll look for it because I don't remember that. Well, and the other thing that I think is really more important, though, than what the search warrant says is the fact that the Detective Angel's affidavit specifically says only items authorized to be seen will be printed out or otherwise copied. Okay, well, they copied the entire hard drive. That was not allowed. And it specifically says that you can't. It also further states that once the forensic analysis is complete, only items relating to the offenses will be copied. Okay, well, they copied the entire hard drive after they did their forensic search. That is completely against what the warrant allows. And then lastly, they say none of the contents of the duplicate originals other than those which may be required for prosecution will be displayed to any person other than the analyst and case agents or otherwise disclosed, used, or copied. They had to copy the whole thing. Otherwise, they would have been guilty of a Brady violation. Well, and I understand that. The feds just should have gotten their own warrant that allowed them to do it. But you're back to the same thing. You're back to the same argument again. The state warrant specifically prohibited them from copying it. Specifically. Regardless of whether they searched the entire computer or they didn't, it specifically prohibited them from copying it. What page of the warrant are you looking at for the copy? Your Honor, I'm specifically looking at the affidavit. And the affidavit in the excerpts of record is in volume four. We're talking about the warrant, not the affidavit. Well, yes, but the affidavit. No, the warrant is what the judge authorized. So you're not, you can't point to the affidavit. What in the warrant contains that restriction on? Well, Judge, in the actual warrant, they had stated, let me get back to it, that the warrant is pursuant to 3920. You know, the practice is minimization. It is. That's not the problem. Well, what you get is the document itself, and then you minimize it. If you listen to the conversations, you don't, if you find out that it's a straight conversation, you don't listen to it. But you have to have the entire document. Otherwise, you can't proceed with a criminal case. And you don't need a separate warrant because Johnson says you don't need a separate warrant. You just have to be careful in using what you have. I don't follow your argument. So specifically, Your Honors, when we were talking about the issue of the affidavit, if you look at the last page of the warrant right above the judge's signature, it says pursuant to 133920. And I've cited 133920 in my brief. It basically says all properties or things taken on a warrant shall remain in the custody of the seizing officer or agency which he represents subject to the order of the court in which the warrant was issued or any other court with which such property or things is sought to be used as evidence. And so I believe that's where they incorporated the portions of the affidavit into the warrant was through that statute. Okay. Thank you very much, counsel. Ms. Bond, you're CJA, right? I am. I just want to commend your advocacy. Thank you. Appreciate the very helpful arguments in this case. Thank you. The case just argued is submitted.
judges: N.R. Smith, Watford, Hellerstein